UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHARA FOWLER,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

CASE NO. C08-5564RBL-KLS

REPORT AND RECOMMENDATION

Noted for May 22, 2009

Plaintiff, Johara Fowler, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 59 years old.[1] Tr. 39. She has a high school education and past work experience as receptionist, general office clerk and mail clerk. Tr. 26, 70, 81, 89, 94.

On September 24, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of September 26, 2002, due to hepatitis C, coccyodynia, depression,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION - 1

arthritis, and neck and shoulder pain. Tr. 16, 59-61, 80, 88. Her application was denied initially and on reconsideration. Tr. 16, 39-40. A hearing was held before an administrative law judge ("ALJ") on July 2, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 500-537.

On September 18, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had a "severe" impairment consisting of back strain/intermittent back pain secondary to mild degenerative disc disease complicated by obesity;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform light exertional work, with certain additional non-exertional limitations; and

(5) at step four, plaintiff was capable of performing her past relevant work.

Tr. 16-27. Plaintiff's request for review was denied by the Appeals Council on July 24, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On September 18, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed with the Court on November 28, 2008. (Dkt. #10). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for further administrative proceedings for the following reasons:

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 2

(a) the ALJ erred in evaluating the opinion of Bert Ferrell, M.D., an examining physician;

(b) the ALJ erred in failing to mention the lay witness evidence in the record; and

(c) the ALJ erred in finding plaintiff capable of performing her past relevant work.

For the reasons set forth below, the undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, that the ALJ's decision should be reversed, and that this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Erred in Evaluating the Opinion of Dr. Ferrell

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where

REPORT AND RECOMMENDATION - 3

the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

REPORT AND RECOMMENDATION - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff was examined in mid-February 2003, by Bert Ferrell, M.D., an examining physician, who diagnosed her with "[m]oderate to severe obesity," complicating a lumbosacral back strain "with motion losses" and hepatitis C. Tr. 256. Dr. Ferrell also assessed plaintiff's ability to perform work-related activities in relevant part as follows:

> Sitting: I think she could be expected to sit about seven hours out of an eight-hour day in a comfortable chair with a good back support, but only about 50 minutes at a time with 10 minute rest periods in between.
>
> . . .
>
> Standing and walking: I think she should be able to stand and walk for about four hours out of an eight-hour day without ramps or ladders, but only for 30 minutes at a time, with 10-minute rest periods in between times.
>
> . . .
>
> Lifting: I think she could be expected to lift about 10 pounds for about maybe five hours out of an eight-hour day, but only for about 30-35 minutes at a time with 15-minute rest periods in between times. Sitting would be better than standing.
>
> . . .

REPORT AND RECOMMENDATION - 5

> Balancing and crouching: She could be expected to balance and crouch about three hours out of an eight-hour day without ramps or ladders. She could only do this for 20 minutes at a time with 10-minute rest periods.
>
> . . .
>
> . . . [B]alancing, crouching, kneeling, and crawling. She could only do these occasionally for about five minutes at a time with 10-minute rest periods in between time. Crawling would be rarely. . . .

Tr. 257-58.

Plaintiff argues that although the ALJ summarized Dr. Ferell's examination of her in his decision (Tr. 19-20), she gave no reason for rejecting the functional limitations contained therein, which differ to a significant extent from those the ALJ included in her assessment of plaintiff's residual functional capacity ("RFC"). Indeed, in terms of physical work-related restrictions, the ALJ assessed plaintiff as having the following:

> . . . [S]he has the residual functional capacity for light exertion with a "sit-stand option allowing her to change between positions as needed, and use of a donut cushion as needed." . . .
>
> Exertionally, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. She can sit for up to 6-hours (cumulatively, not continuously) in an 8-hour workday with normal breaks. She can stand and walk for up to 8-hours (cumulatively, not continuously) in an 8-hour workday with normal breaks. Her push/pull exertional capacities, in her upper and lower extremities, are unlimited to the weight levels she can lift-and-carry, as set forth above.
>
> The claimant's postural non-exertional limitations are that she can climb stairs and equivalent ramps, but she is precluded from climbing ropes, ladders and scaffolding. She cannot do balancing. Otherwise she can do occasional bending, stooping, kneeling, crouching and crawling. . . .

Tr. 26. As noted by plaintiff, there are differences between the ALJ's RFC assessment and that opined by Dr. Ferrell, for example, in the areas of lifting and carrying and standing and walking. Also as noted by plaintiff, if credited, Dr. Ferrell's limitations would preclude the performance

REPORT AND RECOMMENDATION - 6

of her past relevant work, which the vocational expert testified, and the ALJ herself found, to be light exertional work.[3] See Tr. 529-30.

Given that Dr. Ferrell's evaluation report, and the functional limitations set forth therein, constitute significant probative evidence, the ALJ was required to explain why those limitations were not adopted. Because Dr. Ferrell is an examining physician, furthermore, the ALJ also was required to provide both "specific and legitimate" reasons for rejecting them. Her failure to do so here is clear error. Defendant argues the ALJ reasonably adopted the much less restrictive functional assessment provided by Matthew J. Gambee, M.D., another examining physician – whose only comment concerning any physical limitations was to recommend "use of a donut cushion" (Tr. 260) – over that of Dr. Ferrell.

The undersigned, however, finds this argument to be wholly unpersuasive. It is true that the ALJ gave "controlling weight" to Dr. Gambee's "assessment of no physical limitations." Tr. 21. It also is true that the ALJ appears to have done so at least in part because Dr. Gambee is a specialist in physiatry (id.), which can be a valid basis for adopting the opinion of one examining physician over that of another. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference given to opinion of specialist about medical issues related to his or her area of specialty). But because the ALJ provided no actual analysis of Dr. Ferrell's opined limitations, it

---

[3] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).

REPORT AND RECOMMENDATION - 7

is not at all clear that she properly considered them, or, indeed, that she considered them at all in assessing plaintiff's RFC or in relation to Dr. Gambee's opinion. Although, as defendant points out, it is the ALJ's prerogative to resolve conflicts in the medical evidence, it is not at all certain she did so in this instance.

II. The ALJ Erred in Failing to Address the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ, in addition, may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written statements from four individuals who know plaintiff, and who related what they had observed concerning her mental and physical impairments and symptoms and overall ability to function. See Tr. 223-36. As noted by plaintiff, however, the ALJ made no mention of these statements or their contents in her decision. This failure too constitutes reversible error. Defendant cites to Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984), for the proposition that the ALJ is not required to discuss lay evidence when it suggests the claimant suffers from symptoms not supported by acceptable medical evidence. But, as can be seen, that decision pre-dates much more recent Ninth Circuit precedent, which clearly makes express consideration of lay evidence a requirement. See Lewis, 236 F.3d at 511; see also Bruce

REPORT AND RECOMMENDATION - 8

v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (lay testimony concerning claimant's ability to work is competent evidence and cannot be disregarded without comment).

III. The ALJ Erred in Finding Plaintiff Capable of Performing Her Past Relevant Work

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the residual functional capacity to perform at the light work exertional level, with certain additional non-exertional limitations. Tr. 26. As discussed above, furthermore, the ALJ erred in evaluating the functional limitations assessed by Dr. Ferrell and the lay witness statements in the record. Given those errors, it is not at all clear that the ALJ's RFC assessment contains all of plaintiff's limitations. Plaintiff argues as well that the testimony of the vocational expert – i.e., that someone with the limitations plaintiff has could

REPORT AND RECOMMENDATION - 9

perform her past relevant work – cannot be relied on here, because the hypothetical question the ALJ posed included physical functional limitations that were significantly different from those contained in her residual functional capacity assessment.

Once more, the undersigned agrees. An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Vocational expert testimony thus must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). As such, the description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).

At the hearing, the ALJ posed a hypothetical question to the vocational expert, containing the following physical functional limitations:

> . . . Assume an individual . . . [who] is right hand dominant. Assume that she can sit [INAUDIBLE] in an eight-hour day at least one hour at a time, then must change positions for approximately 10 minutes. She can stand six hours, at least 30 minutes at a time, then must change positions for approximately 10 minutes. While she is sitting, she must use a donut pillow. She can lift 20 pounds occasionally, which I will define as up to one-third of the workday, 10 pounds frequently, which I will define as up to two-thirds of the workday. She must avoid ladders, scaffolds, ropes, and balancing. She can perform other postural activities occasionally. She can push and pull within the pound limitations I have given you. . . .

Tr. 530. As pointed out by plaintiff, this hypothetical question contained restrictions on sitting, standing and walking that were not included in the ALJ's RFC assessment. That assessment, for example, required the ability to change positions "as needed," rather than for the "approximately 10 minutes" after 30 minutes of standing limitation given to the vocational expert. Accordingly, it cannot be said that an accurate description of plaintiff's physical limitations was presented to the vocational expert at the hearing, making her testimony unreliable.

REPORT AND RECOMMENDATION - 10

Defendant argues that while the vocational expert was given an incomplete hypothetical here, this did not amount to legal error. Specifically, defendant asserts the ALJ reasonably found plaintiff capable of performing the past work identified by the vocational expert she could do, as that testimony indicated such work could accommodate the sit/stand as needed option contained in the RFC assessment as it is generally performed. But there is nothing in the testimony of the vocational expert on this issue indicating that to be the case. That is, while the vocational expert did testify that the jobs of receptionist and general office clerk allowed for moving between sitting and standing, and that some receptionist jobs involved "a combination of sit/stand and walk" (Tr. 531-32), there is nothing in that testimony to indicate that positions could be changed "as needed." Accordingly, the ALJ erred here as well.

IV. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be

REPORT AND RECOMMENDATION - 11

> resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the objective medical and lay witness evidence in the record, plaintiff's residual functional capacity, and her ability to perform past relevant work, this matter should be remanded to the Commissioner for further administrative proceedings. If, on remand, it is determined that plaintiff cannot return to her past relevant work, then, at step five of the sequential disability evaluation process, the Commissioner should determine as well whether she is able to perform other jobs existing in significant numbers in the national economy.

Plaintiff further requests the Commissioner be required on remand to obtain additional medical evidence regarding her hepatitis C. The record does contain some medical evidence that was before the ALJ (Tr. 257-58, 485), and submitted for the first time to the Appeals Counsel (Tr. 496), that plaintiff's alleged fatigue and other symptoms may be caused at least in part due to that disease. While the undersigned is not recommending remand on this basis, in light of that evidence and the ALJ's duty to fully and fairly develop the record, and because this matter is being remanded anyway, all available, relevant evidence regarding plaintiff's hepatitis C should be obtained and properly evaluated by the Commissioner.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 22, 2009**, as noted in the caption.

DATED this 29th day of April, 2009.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13